```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA            :
                                    :
            -v-                     :
                                    :        10 Cr. 94 (JSR)
MAURICE PATTERSON, TYRONE OLDYN,    :
JAMAR MILLER,                       :        OPINION AND ORDER
                                    :
            Defendants.             :
------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

On August 3, 2010, the President signed the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372 (Aug. 3, 2010)(the "FSA"), which raised the threshold amount of "crack" cocaine necessary to trigger a mandatory sentence of 5 years from 5 grams to 28 grams, and the corresponding amount necessary to trigger a mandatory sentence of 10 years from 50 grams to 280 grams. See FSA § 2. Around the same time, three of the defendants in this multi-defendant case, namely Maurice Patterson, Tyrone Oldyn, and Jamar Miller, separately pled guilty to "conspir[ing] to distribute . . . fifty grams and more . . . of crack" cocaine between 2002 and February, 2010. See United States v. Miller, 10 Cr. 94-05, Transcript, 8/2/2010; United States v. Patterson, 10 Cr. 94-01, Transcript, 8/3/2010; United States v. Oldyn, 10 Cr. 94-04 Transcript, 8/5/2010. At the times of these guilty pleas, each of these defendants was advised that he was subject to a mandatory

1

minimum sentence of 10 years imprisonment under the statutory framework in place at the time of their offenses. None of them, however, has yet been sentenced, and, while none of them has moved to withdraw his guilty plea, each now moves to have his sentence imposed in accordance with the terms of the FSA – meaning that in each of their cases the Court would be free to impose a sentence as low as five years. In effect, the defendants are seeking to have the FSA applied retroactively to sentences occurring after the date of its enactment, though not otherwise.

Pursuant to the so-called "Savings Statute," 1 U.S.C. § 109, a criminal defendant is subject to the statutory "penalty, forfeiture, or liability" in place at the time he commits the offense -- and therefore does not benefit from a subsequently-enacted reduction -- "unless the repealing Act ... expressly provide[s]" otherwise. Id.; see Warden v. Marrero, 417 U.S. 653, 661 (1974) (the Saving Statute "bar[s] application of ameliorative criminal sentencing laws repealing harsher ones in force at the time of the commission of an offense").[1] Although any reduction in a mandatory penalty inevitably creates disparities between those who committed the corresponding crime sooner rather than later, Congress, by

---

[1] Contrary to the defendants' assertions, see Def. Mem. at 16-20, it is clear from existing precedent that the statutorily prescribed minimum sentences for crack-related offenses that were amended by the FSA are "penalties" covered by the Savings Statute. See Marrero, 417 U.S. 653, 659 (1974).

2

enacting the Savings Statute, determined in effect that those who chose to commit serious crimes at a time when they faced very substantial penalties were hardly in a position to complain simply because those who committed the same crimes later on faced less onerous penalties.

Here, it is manifest that no language of the FSA expressly mandates that its provisions apply retroactively. As a result, the Second Circuit, like other circuits, has already held that the FSA does not apply retroactively to criminal defendants who were sentenced prior to August 3, 2010 (the date of FSA's enactment). See United States v. Baldwin, No. 09-1725-CR, Slip Copy, 2010 WL 4250060 (2d Cir. Oct. 27, 2010) (the FSA "contains no express statement that it is intended to have retroactive effect nor can we infer such intent from its language"); see also United States v. Carradine, 2010 WL 3619799, at *4-5 (6th Cir. Sept. 20, 2010)(same); United States v. Gomes, 2010 WL 3810872, at *2 (11th Cir. Oct. 1, 2010)(same); United States v. Bell, 2010 WL 4103700, at *10-11 (7th Cir. Oct. 20, 2010)(same).

The Supreme Court has held, however, that the Savings Statute does not apply in instances where, by "necessary implication, arising from the terms of the law as a whole," it is clear that "the legislative mind will be set at naught by giving effect to the [Savings Statute]." Great Northern Ry. Co. v. United States, 208 U.S. 452, 465 (1908). The gist of defendants' instant motion is to argue that by "necessary implication, arising from the terms of the

3

law as a whole," one must conclude that Congress intended the reduced penalties of the FSA to apply to those offenders who, even though they committed their crimes prior to August 3, 2010, were not sentenced until after that date.

This rather finespun distinction between two aspects of retroactivity finds no support in any pre-FSA case law. On the contrary, in United States v. Klump, 536 F.3d 113 (2d Cir. 2008), for example, the Second Circuit applied the Savings Statute to uphold the sentencing of a defendant under a mandatory minimum penalty that was in place at the time of his criminal conduct but had been repealed by the date of his actual sentencing date. However, in a recent decision from the District of Maine, the Honorable D. Brock Hornby, U.S.D.J., held that the FSA applies retroactively to defendants who have not been sentenced prior to August 3, 2010. United States v. Douglas, __ F. Supp. 2d __, 2010 WL 4260221 (D. Me. 2010). It is the reasoning in Douglas on which the movants here chiefly rely.

Despite this Court's tremendous respect for Judge Hornby, this Court is not persuaded that such an unlikely result -- by which, regardless of the penalties applicable when the crimes were committed, the sentences are a function of when the sentencing occurs -- is a "necessary implication" of the terms of the FSA. Douglas relies primarily on the fact that the FSA expressly grants the United States Sentencing Commission (the "Commission") "emergency authority" to issue "conforming" amendments to the Sentencing Guidelines so as to "achieve consistency" in federal sentencing law, and directs the

4

Commission to issue these amendments "not later than 90 days after the date of enactment of this Act," FSA § 8.[2] Since, under the pertinent provision of the Sentencing Reform Act of 1984, 18 U.S.C. § 3553(a)(4)(A)(ii), the applicable Sentencing Guidelines are ordinarily those "in effect on the date the defendant is sentenced," id., Douglas argues that the necessary implication of Congress's directive that the Commission issue emergency amended Guidelines "conforming" to the FSA is that Congress also intended that the FSA's reduced mandatory sentencing provisions apply immediately to all criminal defendants sentenced after the FSA entered into force. Douglas at *4.

However, as noted above, the Second Circuit, for one, has never held that the Sentencing Reform Act of 1984 trumps, or even modifies, the Savings Statute so far as mandatory penalties are concerned. See, e.g., Klumps, supra. More fundamentally, it is one thing to direct, as the FSA does, that the Sentencing Guidelines, which are now discretionary, be promptly conformed and applied to a new regime, and quite something else to infer from this that Congress necessarily intended that mandatory minimums, which are legislative dictates, be reduced retroactively in sentences following the date of the new enactment, notwithstanding the presumption of the Savings Statute.

---

[2] This was in fact done. See Temporary Emergency Amendment to Sentencing Guidelines and Commentary, 75 Fed. Reg. 66188, 66191 (Oct. 27, 2010).

5

This Court concludes that nothing in the language of the FSA even hints at, let alone necessitates, the latter inference.

Although this really ends the analysis, the Court also respectfully disagrees with the suggestion in Douglas that such limited retroactivity finds support in FSA's legislative history. On the contrary, the legislative history of the FSA demonstrates that Congress was acutely aware of retroactivity issues as it considered the measure -- even considering making the entire measure retroactive -- but chose in the end to insert no language expressly addressing retroactivity, thus leaving the Savings Statute as the default position. See Restoring Fairness to Federal Sentencing: Addressing the Crack-Powder Disparity, S. Comm. on the Judiciary, Senate Hearing 111-559, at 19, 22 (2009).

Buttressing this conclusion is the fact that Congress has proven quite capable of drafting language making a reduced-penalty provision wholly or partly retroactive when it so desires. See, e.g., St. Cyr v. I.N.S., 229 F.3d 406, 416 n.5 (2d Cir. 2000) (noting that "Congress expressly provided a retroactive temporal reach" for certain provisions of the Illegal Immigration Reform and Immigrant Responsibility Act). By contrast, in two unenacted pieces of legislation that dealt with the same subject matter as the FSA, and which were introduced in the session of Congress immediately preceding that which enacted the FSA, the sponsoring legislators included a clause that would have mandated that the legislation not only not be retroactive but, in fact, not even take effect until six

months after enactment.  See Sentencing Reform and Cocaine Kingpin Trafficking Act of 2007, S.1711, 110th Cong. § 11 (2007) (stating that "[t]he amendments made by this Act shall apply to any offense committed on or after 180 days after the date of enactment of this Act."); Drug Sentencing Reform Act of 2007, S. 1383, 110th Cong. § 204(b)(1) (2007) (same).  Tellingly, each of these unenacted pieces of legislation also contained provisions directing the Commission to issue conforming "emergency amendments" to the Sentencing Guidelines, provisions substantially identical to Section 8 of the FSA.  This suggests, at a minimum, that there is no necessary tension between directing emergency amendments to the Sentencing Guidelines and continuing to apply at sentence the statutory mandatory minimums that were in force at the time a defendant committed the underlying crime.

Nor, frankly, do the defendants here have any cause to complain.  The defendants in this action engaged in criminal acts while those acts were subject to a mandatory minimum sentence of ten years, and, as noted, they pled guilty to those crimes on the express understanding that the Court was bound by statutory mandate to impose, at minimum, a ten year sentence for the crimes to which they had now confessed.  See Miller, supra, transcript, at 8; Patterson, supra, transcript, at 7; Oldyn, supra, transcript, at 7.  While this Court could not agree more with those commentators who have criticized mandatory minimum sentences for requiring judges to impose overly harsh sentences in particular cases, the instant cases present no such moral

7

dilemmas.

Accordingly, for the foregoing reasons, the Court concludes that the FSA's reduced statutory minimums do not apply in the instant cases and that the defendants here remain subject to the ten-year mandatory minimum. Counsel for each of the defendants is therefore directed to convene, by no later than January 6, 2011, a conference call with Government counsel and the Court to set a sentencing date; and the Clerk of the Court is directed to close documents numbered 97 and 98 on the docket of this case.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated:   December 30, 2010
         New York, NY